UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERIC PELLETIER, | ) | Case No. ED CV 16-591-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| NANCY BERRYHILL, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

## I.

## **INTRODUCTION**

On March 31, 2016, plaintiff Eric Pelletier filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the Administrative Law Judge ("ALJ") properly considered the opinion of a nurse practitioner. Plaintiff's Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-9; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-9.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly consider the opinion of the nurse practitioner. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was fifty-one years old on the alleged onset date, has a tenth grade education. AR at 106, 269. Plaintiff has past relevant work as a swimming pool servicer, tractor-trailer truck driver, tire repairer, and awning hanger. *Id*. at 86-87.

On January 15, 2014, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset date of January 1, 2013 due to depression, anxiety, back injury, post-traumatic stress disorder, and high blood pressure. *Id*. at 106-07, 120. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id*. at 170-84.

On September 4, 2015, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 37-95. The ALJ also heard testimony from Delpha Pelletier, plaintiff's wife, and Sandra Fioretti, a vocational expert. *Id*. at 78-93. On October 28, 2015, the ALJ denied plaintiff's claim for benefits. *Id*. at 18-31.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. *Id*. at 20.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; sprain and strain of the thoracic spine; obesity; mood disorder; anxiety disorder; and personality disorder. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 21.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined he had the RFC to perform a range of work of medium work with the limitations that plaintiff could: lift, carry, push, and pull fifty pounds occasionally and twenty-five pounds frequently; stand and walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; and understand, remember, and carry out instructions to perform tasks that are simple and routine. *Id*. at 22. With regard to interactions, plaintiff could have superficial contact with the public, and have unlimited contact and interaction with supervisors as necessary to receive work task related instructions. *Id*. at 22-23. But the ALJ precluded plaintiff from any work task related interaction with the public and co-workers, as well as from ever working with a supervisor cooperatively on a tandem task. *Id*.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1       The ALJ found, at step four, that plaintiff was unable to perform and of his past relevant work. *Id*. at 28.

      At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including bench assembler, small products assembler II, and routing clerk. *Id*. at 29-30. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA"). *Id.* at 30.

      Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 3-5. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

      This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

      "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

Plaintiff argues the ALJ failed to properly consider the opinion of Mary Ann Honeycutt, a Doctor of Nurse Practice (DNP). P. Mem. at 5-9. Specifically, plaintiff contends the ALJ failed to give germane reasons supported by substantial evidence for discounting Dr. Honeycutt's opinion. *Id*.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (3), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of

---

[2] For claims filed before March 27, 2017, the evidence is considered under 20 C.F.R. §§ 404.1527, 416.927.

5

the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ must also consider evidence from those who are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). An ALJ may only reject the opinion of a not acceptable medical source if there is a germane reason. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

### **Dr. Mary Ann Honeycutt**

Plaintiff received treatment at Affiliated Psychological Services ("Affiliated") from December 3, 2013 through at least the hearing date. *See* AR at 59, 474. Three individuals provided treatment. Dr. Richard N. Chenick, a psychiatrist, treated plaintiff from January 2014 through March 2014. *See id*. at 533-35. Dr. Mary Ann Honeycutt, a nurse practitioner, took over for Dr. Chenick and started treating plaintiff from approximately March 13, 2014.[3] *See id*. at 59, 532. Dr. Honeycutt treated plaintiff every two weeks or once a month depending on how plaintiff was doing on his medication. *See id*. at 59; *see, e.g. id*. at 521-26. Melody Bevens, a marriage and family therapist, provided plaintiff counseling on a weekly basis starting in December 2013. *See id*. at 474-76; *see, e.g., id*. at 506-20.

Dr. Honeycutt observed plaintiff often had avoidant attention, an anxious affect, and episodic irritability. *See, e.g, id*. at 521-32. Although plaintiff exhibited poor to fair judgment and insight when treatment began, by July 2015, plaintiff's insight had improved to fair to good. *See id*. at 883. Likewise, Dr.

---

[3] Dr. Mary Ann Honeycutt is also referred to in treatment notes as Dr. Mary Ann Honeycutt-Shirbroun. *See, e.g.,* AR at 532.

6

Honeycutt also observed that plaintiff, who had a history of cutting, did not cut himself from March 23, 2015 through at least July 20, 2015. *Id*. at 879-83.

In March 2015, Dr. Honeycutt completed two medical opinion forms, one concerning plaintiff's mental ability to do work-related activities ("Mental RFC Opinion") and one concerning plaintiff's physical ability to do work-related activities ("Physical RFC Opinion"). *Id*. at 426-30. The ALJ gave little weight to both the Mental RFC Opinion and Physical RFC Opinion (*see id.* at 27-28), but plaintiff only contends the rejection of the Mental RFC Opinion was in error. As such, the court will only discuss the Mental RFC Opinion.

In the Mental RFC Opinion, dated March 18, 2015, Dr. Honeycutt opined plaintiff would be unable to meet competitive standards in most categories of mental abilities and aptitudes needed to do unskilled, semiskilled, and skilled work. *Id.* at 426-27. Dr. Honeycutt explained that plaintiff's compulsions, delusions, and anxiety precluded his ability to interact, remember, and act on instructions and/or routines, and plaintiff had unpredictable episodes of intense anxiety which would interfere with all work routines. *Id*. at 427.

**Other Opinions Regarding Plaintiff's Mental RFC**

State Agency psychological consultant Dr. Melissa Jackson opined plaintiff could perform work where interpersonal contact is routine but superficial, complexity of tasks is learned by experience, and the supervision required is little for routine tasks but detailed for non-routine tasks. *Id.* at 116, 130. State Agency psychological consultant Dr. Pamela Hawkins adopted Dr. Jackson's opinion and also opined plaintiff should have limited public contact. *Id*. at 147, 162.

Dr. Linda M. Smith, a consultative examining psychiatrist, opined plaintiff was mildly impaired in his ability to interact appropriately with supervisors, coworkers, or the public but otherwise not impaired. *Id.* at 399-400.

**The ALJ's Findings**

The ALJ determined plaintiff had the mental RFC to: understand, remember, and carry out instructions to perform tasks that are simple and routine; have superficial contact with the public, but no work task related interactions with the public; be around coworkers, but no work task related interaction with coworkers; and have unlimited contact and interaction with supervisors as necessary to receive work task related instructions, but not ever work with a supervisor cooperatively on a tandem task. *Id*. at 22-23. In reaching his RFC determination, the ALJ gave partial weight to the opinions Dr. Jackson and Dr. Hawkins that plaintiff could perform semi-skilled work that only required routine and superficial interpersonal contacts, and gave little weight to the opinions of Dr. Smith and Dr. Honeycutt. *Id*. at 28. Plaintiff only challenges the ALJ's discounting of Dr. Honeycutt's opinion.

Nurse practitioners are not acceptable medical sources.[4] *Britton*, 787 F.3d at 1013; 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Instead, a nurse practitioner is an "other source," and an ALJ only needs to cite germane reasons for discounting the opinion. *Id*.

The ALJ provided two reasons for discounting Dr. Honeycutt's opinion. First, Dr. Honeycutt's "limited explanation" that plaintiff's compulsions, delusions, and anxiety were the bases for her opined limitations was inconsistent with her treatment notes, which only documented anxiety but not compulsions or delusions. AR at 28. Second, Dr. Honeycutt was not an acceptable medical

---

[4] The Social Security Administration has issued new regulations. Although a nurse practitioner is considered an acceptable medical source under the new regulations, this case was filed prior to March 27, 2017 and, as such, the previous definition of acceptable medical sources applies. *See* 20 C.F.R. §§ 404.1502(a)(7); 416.902(a)(7) (effective March 27, 2017).

8

source and her opinion was therefore not entitled to be given the same weight as the opinions from acceptable medical sources. *Id*.

The inconsistency of an opinion with treatment notes is a germane reason for rejecting the opinion, but such reason must be supported by the evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (a conflict between an opinion and treatment notes is a germane reason for rejecting the opinion of a treating provider); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). Here, this reason for rejecting Dr. Honeycutt's opinion was not supported by the evidence. The ALJ stated that Dr. Honeycutt's treatment notes did not document compulsions or delusions. AR at 28. In fact, Dr. Honeycutt's treatment notes are replete with mentions of plaintiff's compulsions to cut himself. *See, e.g. id.* at 527, 530-32, 874. Dr. Honeycutt's notes also include references to paranoia, delusions, and psychotic features. *See id.* at 521, 526, 530, 873. As such, the ALJ's first reason for rejecting Dr. Honeycutt's explanation for her opinions – lack of documentation of compulsions and delusions in the treatment notes – was not supported by substantial evidence.

The ALJ's second reason for rejecting Dr. Honeycutt's opinion was that the opinion of a not acceptable medical source cannot be given the same weight as an opinion from an acceptable medical source. *Id*. at 28. Although it is proper to give the opinions of acceptable medical sources greater weight than the opinions of not acceptable medical sources, the opinion of a not acceptable medical source may, depending on the facts of a particular case, be given greater weight than the opinion of an acceptable medical source. *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). "For example, it may be appropriate to give more weight to the opinion of [a non-acceptable medical source] if he or she has seen the individual

more often than the treating source, [and] has provided better supporting evidence and a better explanation for the opinion." *Id.*; Social Security Ruling 06-03p. Thus, the mere fact that Dr. Honeycutt is a nurse practitioner was not a germane reason to reject her opinion. Rejection on this basis alone amounted to a wholesale rejection of all opinions from those who are not acceptable medical sources and therefore was not germane to Dr. Honeycutt. *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (the ALJ's rejection of plaintiff's family member's testimony as biased "amounted to a wholesale dismissal of the testimony of all [the family] witnesses as a group and therefore does not qualify as a reason germane to each individual who testified").

To the extent that the ALJ rejected Dr. Honeycutt's opinion because it was limited, as defendant argues, this argument was also not supported by the evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (ALJ properly rejected physician's assistant opinion because it primarily consisted of standardized, check-the-box form); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected check-off reports that did not contain any explanation of the bases of the conclusions). Dr. Honeycutt did not merely check off boxes in a form opinion, but also explained the bases for her opined limitations, as well as provided her treatment notes. Dr. Honeycutt's explanations were not lengthy, but the opinion also cannot be classified as wholly conclusory or without basis.

Defendant cites additional reasons why the ALJ correctly discounted Dr. Honeycutt's opinions – inconsistency with the treatment notes generally, inconsistency with the opinions of acceptable medical sources, reliance on plaintiff's discredited subjective complaints, and lack of clinical findings. *See* D. Mem. 4-8. But the ALJ did not cite any of these reasons in his opinion, and therefore this court will not address the merit of the additional reasons cited by

defendant. *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (the court cannot affirm the ALJ's decision on a ground the ALJ did not make); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (court is "constrained to review the reasons the ALJ asserts"); *Nelson v. Astrue*, 610 F. Supp. 2d 1070, 1076 n.7 (C.D. Cal. 2009) (declining to address additional reason cited by the Commissioner as to why the ALJ conducted a proper credibility assessment when ALJ had not cited the reason in his decision).

In sum, the ALJ's given reasons for discounting Dr. Honeycutt's opinion were not both germane and supported by substantial evidence. As such, the ALJ erred in discounting the opinion.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,

211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, as the outcome upon proper evaluation of the evidence is unclear, remand is required. On remand, the ALJ shall reconsider the opinion provided by Dr. Honeycutt and either credit her opinion or provide a reason germane to her and supported by substantial evidence for rejecting it. The ALJ shall then determine plaintiff's RFC and proceed as necessary through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: July 31, 2017

SHERI PYM
United States Magistrate Judge